UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLEY BETH WENDELL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 19-cv-10158
Honorable Laurie J. Michelson

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [12]**

Shelley Wendell believes that her low back pain and associated leg pain prevent her from working on a full-time basis. After shoveling snow in February 2015, Wendell began to experience pain in her low back that radiated into her legs. (PageID.725, 797.)[1] An MRI revealed moderate to severe canal stenosis and bilateral neural foraminal narrowing in Wendell's lumbar spine; in lay terms, the scan showed that the spaces in Wendell's lower spine had narrowed, placing pressure on the nerves exiting her spine. (*See* PageID.280.) Wendell underwent treatment for that condition, including medication (painkillers and muscle relaxants), multiple epidural injections, and some physical therapy. (*E.g.*, PageID.283, 288–289, 294, 297, 299, 507–508, 514.) But nothing improved Wendell's back and leg pain to the point where she felt she could work. So in March 2016, Wendell applied for disability-related benefits from the Social Security Administration.

---

[1] Unless otherwise indicated, all record citations are to ECF No. 8, which is the transcript of administrative proceedings.

In January 2018, an administrative law judge (ALJ) found that Wendell was not "disabled" as that term is used in the Social Security Act. In particular, the ALJ found that even with her back condition, Wendell could still perform most of the requirements of "sedentary" work. (PageID.39.) Generally speaking, "sedentary" jobs require lifting no more than 10 pounds and allow a person to sit for at least six of the eight workday hours. *See* SSR 96-9P, 1996 WL 374185, at *3 (July 2, 1996). The ALJ found that even with her back pain, Wendell could perform a sedentary job so long as the job also did not require lifting more than five pounds, required only occasional "postural maneuvers" (things like balancing or crouching), and allowed Wendell to sit or stand every 15 minutes as needed. (PageID.39.) The ALJ further found that Wendell's prior jobs of receptionist, administrative assistant, and property manager all fit that description. (PageID.44.) Because Wendell's residual functional capacity (what she could still do despite her back pain) permitted her to do some jobs on a full-time basis, the ALJ concluded that Wendell was not disabled under the Social Security Act. (PageID.45.) That conclusion became the final decision of the Commissioner of Social Security after Wendell's request for further administrative proceedings was denied.

Having exhausted her avenues for administrative relief, Wendell turns to federal court. She asks this Court to reverse the Commissioner's disability decision or, at least, to remand the case to the agency for further inquiry. (*See generally* ECF No. 12.) Because the ALJ's findings are supported by substantial evidence and because the ALJ complied with procedural rules governing disability determinations, *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), the Court will affirm the Commissioner's decision.

Wendell argues that the ALJ "never considered" the side effects of her medications. (ECF No. 12, PageID.824.) For her back pain, Wendell took methocarbamol (a muscle relaxant) and

tramadol (a narcotic-like pain reliever), among other medications. (*E.g.*, PageID.303, 392, 400.) Wendell says that "[c]ommon side effects" of her medications include "joint or muscle pain, fatigue or drowsiness, numbness or tingling in [the] lower extremities, and increased risk of fractures." (ECF No. 12, PageID.824.)

While these symptoms do appear in Wendell's medical records, little suggests that they were caused by medication. In fact, the record reflects almost no medication side effects. True, at the administrative hearing, Wendell told the ALJ that her medication caused weight loss and "sleepiness." (PageID.70.) But consider the rest of the record. In July 2015, Wendell's doctor refilled her medications and the associated treatment notes mention no side effects. (PageID.289.) In April 2016, a form expressly asked Wendell about side effects; she indicated she had none. (PageID.242.) In May 2016, Wendell's physician completed a form about Wendell's functional capacity; when asked about side effects, the physician noted only "decreased appetite." (PageID.777.) Treatment notes from July, August, and November 2016 include a brief discussion of Wendell's medications and state "no significant side effects." (PageID.418, 426, 462.) And in May 2017, Wendell's doctor noted, "patient states that this medicine works well for her[;] she does not have any adverse reaction." (PageID.797.) In all, the record strongly suggests that Wendell's medication would not have materially limited her ability to work.

By complaining that the ALJ failed to "consider[]" or "discuss" her medication side effects (ECF No. 12, PageID.824), perhaps Wendell also thinks there was a procedural error (i.e., regardless of whether side effects limited her ability to work, the ALJ still needed to consider that possibility and discuss it in her narrative). But it appears that the ALJ did consider side effects: she asked about them at the hearing. (PageID.70.) And while the ALJ's narrative does not discuss side effects, Wendell cites no law requiring the ALJ to do so when, as here, the record reflects no

3

significant side effects. In fact, in similar situations, courts have found the ALJ's failure to discuss side effects to be harmless. *Szczurek v. Comm'r of Soc. Sec.*, No. 1:18-CV-02608-JDG, 2019 WL 5684489, at *13 (N.D. Ohio Nov. 1, 2019); *Soto v. Comm'r of Soc. Sec.*, No. 17-10054, 2018 WL 2181098, at *9 (E.D. Mich. Mar. 2, 2018), *report and recommendation adopted*, 2018 WL 1466087 (Mar. 26, 2018); *cf. Kornecky v.Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

Wendell also argues that the ALJ erred in finding that she could perform some of her old jobs. As noted, the ALJ concluded that Wendell had the residual functional capacity to perform "sedentary" work with some additional limitations (such as lifting only five pounds) and that Wendell's prior jobs as a receptionist, an administrative assistant, and a property manager were all within her residual functional capacity. (PageID.39, 44.) Wendell claims that those jobs were all at the more-demanding "light" exertional level, and thus the ALJ was wrong to find that she could still perform them. (ECF No. 12, PageID.822–823.)

Wendell may be correct that those jobs, as they are generally performed, are at the light exertion level. But an ALJ's finding that a claimant can perform her prior jobs is correct if the claimant still can do the jobs as they are generally performed *or as the claimant actually performed them*. *See* SSR 82-61, 1982 WL 31387, at *1–2 (Jan. 1, 1982). And at the hearing, the ALJ asked about the amount of sitting, lifting, and bending involved in each of Wendell's prior jobs. Wendell testified that as a receptionist, she sat at least six hours a day and lifted only five pounds. (PageID.69.) Wendell told the ALJ that for both administrative-assistant jobs, she sat for seven or eight hours and lifted five pounds. (PageID.67–68.) Wendell testified that at one property-manager job she would sit six hours a day and lift "five pounds at most." (PageID.65–66 (Community Management).) As for her other property-management job, Wendell recalled sitting six hours a

day and lifting "10 pounds at the most." (PageID.62–63 (Denmark Management).) Thus, substantial evidence supports the ALJ's determination that Wendell's residual functional capacity would permit her to do her prior jobs in the way that she had actually done them. Indeed, after Wendell described her jobs, the ALJ had a brief, on-the-record exchange with the vocational expert: "VE: Just to be clear, it sounds like every position she held as the administrative assistant, was performed at sedentary? ALJ: Yes, that's what I got. VE: As well as the property management? ALJ: Yes." (PageID.69.) That's what the Court got too.

Finally, Wendell argues that her prior jobs as a receptionist and administrative assistant were too old to be considered by the ALJ. (ECF No. 12, PageID.823.) In deciding whether a claimant can still perform the jobs listed in her work history, an ALJ is usually not supposed to look more than 15 years into the past. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). Wendell points out that the ALJ's decision in her case was in January 2018; so, in her view, the ALJ should have excluded the receptionist and administrative-assistant work she did before January 2003. (ECF No. 12, PageID.823.)

This argument does not warrant reversal. Wendell may be partly correct—it does seem as though she was a receptionist from 1998 to 2002, more than 15 years before the ALJ's decision. (PageID.68, 227.) But Wendell's first administrative-assistant job was from July 2002 to December 2003 (PageID.68 (Zalco), 220, 227); so a year of that job was within the 15-year window. And Wendell's second administrative-assistant job was more recent, in 2004. (PageID.66–67 (RP Management), 220, 227.) Both property-manager jobs were still more recent. (PageID.62 (Denmark); PageID.65, 227 (Community Management).) So even if Wendell's recency argument has merit, she has only shown harmless error. That is, even excluding her work

as a receptionist as beyond the 15-year marker, the ALJ was still correct to consider whether Wendell could perform her prior work as an administrative assistant and property manager.

Wendell makes a number of additional arguments that the Court need not address. These arguments all attack the ALJ's alternative holding that, aside from Wendell's past work, there were other jobs should could do. In his brief, the Commissioner states that he "does not rely on the ALJ's alternative step five finding, and thus, the Court need not address these arguments." (ECF No. 16, PageID.854.) Fair enough.

For the reasons given, the Court DENIES Wendell's motion for summary judgment (ECF No. 12) and GRANTS the Commissioner's motion (ECF No. 16.) The decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

SO ORDERED.

Dated: February 7, 2020

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE